# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAMES C. GALLAGHER,<br><br>Plaintiff,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. 21-cv-11411-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                    **May 16, 2022**

## I.        Introduction

Plaintiff James C. Gallagher ("Gallagher") has filed this lawsuit against Defendant J.P. Morgan Chase Bank, N.A. ("Chase") alleging claims for breach of contract (Count I), breach of covenant of good faith and fair dealing (Count II), negligence (Count III), unjust enrichment (Count IV), promissory estoppel (Count V), conversion (Count VI), Mass. Gen. L. c. 93A, § 9 (Count VII) and Mass. Gen. L. c. 200A, § 7A (Count VIII). D. 1-1. Chase has moved to dismiss all Counts. D. 6. Gallagher has voluntarily agreed to dismiss Count VIII. D. 11 at 20. For the reasons stated below, the Court ALLOWS the motion.

## II.       Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific

inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal

allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory

legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual

allegations present a "reasonable inference that the defendant is liable for the conduct alleged."

Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint

must provide sufficient factual allegations for the Court to find the claim "plausible on its face."

García-Catalán, 734 F.3d at 103 (citation omitted).

### III.    Factual Background

The following facts are as alleged in the verified complaint, D. 1-1, including the

documents fairly incorporated therein, Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st

Cir. 2004), and the Court accepts them as true for consideration of the pending motion to dismiss.

On or around April 9, 1999, Henry Turecki ("Turecki"), the uncle of Gallagher's wife, purchased

three certificates of deposit ("CDs") with a combined total value of $75,466.57 from a Florida

branch of AmeriFirst Bank, FSB ("AmeriFirst").  D. 1-1 ¶¶ 4–6.  The three CDs matured on July

12, 1991, August 1, 1991 and August 4, 1991, respectively.  D. 19-2 at 2–4.  As alleged, upon the

date of maturity, the principal of each CD automatically renewed at the current rate, id., and

according to Gallagher, "the CDs continually renewed between 1991 and 1998," D. 1-1 ¶ 11.  At

some point in 1991, Turecki transferred the CDs to Gallagher and Gallagher's wife, with survivor

benefits.  Id. ¶¶ 7–8.  When Gallagher's wife later died, Gallagher became the sole owner of the

CDs.  Id. ¶ 9.  Gallagher claims that funds in the CDs were never withdrawn and that he "has

retained the original CDs in his possession, custody, and control . . . since 1991."  Id. ¶ 8 (internal

citations omitted).

After the purchase of the CDs, the AmeriFirst branch from which Turecki purchased the CDs closed.  Id. ¶ 10.  Gallagher claims that through "merger, acquisition, or other reason," Chase held and renewed the CDs pursuant to an agreement with Gallagher ("Agreement").  Id. ¶ 12. Gallagher contacted Chase and "demanded" the bank turn over the funds.  Id. ¶¶ 16–17.  In response, Chase noted that the funds may have been transferred to the state Unclaimed Property Division as abandoned property.  Id. ¶ 20.

## IV.   Procedural History

Gallagher instituted this action on July 20, 2021 in Plymouth Superior Court.  D. 1-1. Chase removed the matter to this Court.  D. 1.  Chase has now moved to dismiss.  D. 6.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 21.

## V.   Discussion

### A.   <u>Count I: Breach of Contract</u>

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach."  <u>Young v. Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 232 (1st Cir. 2013) (internal citation and quotation marks omitted).  Whether a contract exists is a matter of law for the Court to determine.  <u>Id.</u> at 231; <u>Lexington Ins. Co. v. All Regions Chem. Labs, Inc.</u>, 419 Mass. 712, 713 (1995).  To avoid dismissal, "a complaint must describe the alleged terms of the contract with enough specificity to provide a defendant with the requisite notice of the nature of the claim."  <u>Foss v. Marvic</u>, 365 F. Supp. 3d 164, 167 (D. Mass. 2019), <u>aff'd sub nom.</u> <u>Foss v. Marvic, Inc.</u>, 994 F.3d 57 (1st Cir. 2021).  A plaintiff must either quote specific contractual language, summarize the alleged legal effect of the contract, or attach the actual contract.  <u>Id.</u> (citation omitted).  Where a plaintiff has not provided the contract to the court, a

3

plaintiff must "state the nature of the alleged contract with [ ] specificity."  Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (dismissing claim because, *inter alia*, plaintiff did not allege any contractual terms, when the contract was formed, the duration of the contract or the obligations the contract imposed upon the defendant).  Courts have denied motions to dismiss even absent an attached contract where the plaintiff alleged the relevant terms, duration and when the contract was formed.  See Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship, 347 F. Supp. 3d 61, 66–67 (D. Mass. 2018); see also FabriClear, LLC v. Harvest Direct, LLC, 481 F. Supp. 3d 27, 33 (D. Mass. 2020) (finding pleading requirements satisfied where the plaintiff alleged that the parties entered into a contract and that the defendant breached same by failing to comply with certain terms).  As to breach, a plaintiff must "do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with substantial certainty, the specific contractual promise the defendant failed to keep."  Brooks v. AIG SunAm. Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007) (citation and internal quotation marks omitted).

Gallagher alleges that following the closure of the AmeriFirst branch where Turecki purchased the CDs, "[b]y way of merger, acquisition, or other reason," Chase held the CDs "pursuant to an agreement with [Gallagher]."  D. 1-1 ¶¶ 10, 12.  Gallagher has not provided a contract beyond the CDs themselves.  Based on his allegations, however, it appears that Gallagher claims the Agreement is something separate from and in addition to the CDs.  Gallagher outlines the alleged terms of the Agreement, including that:  (1) Chase was required to allow Gallagher to access the funds; (2) interest continued to accrue on the value of the CDs; and (3) Gallagher was to receive notices regarding the CDs' maturity dates.  Id. ¶¶ 26–28.  Gallagher claims that Chase breached said Agreement and caused harm by failing to:  (1) safeguard the funds associated with the CDs; (2) maintain records of the CDs; (3) properly notice Gallagher; (4) provide Gallagher

with access to the funds; and (5) surrender the funds to Gallagher.  Id. ¶ 30.  Key to his claim is the allegation that the Agreement allowed for automatic renewal of the CDs such that Chase must turn over the funds to him upon his demand for same.  Id. ¶¶ 11–12, 16–17; D. 19-1.

Gallagher has not plausibly alleged the existence of contract, particularly as to the renewal of the CDs; i.e., that the CDs "continually renewed between 1991 and 1998."  D. 1-1 ¶ 11; D. 7 at 4 (citing complaint); see Chasman v. JP Morgan Chase Bank, NA, No. 18-cv-6681, 2020 WL 207784, at *3 (S.D.N.Y. Jan. 14, 2020) (dismissing breach of contract claim regarding defendant's alleged failure to renew CDs at certain interest rate where plaintiffs failed to allege plausibly that CDs were perpetually renewable).  Even where a CD is subject to automatic renewal upon its date of maturity (as the CDs in this case, D. 19-2), it is nevertheless deemed abandoned property at some point, depending on the length of the CD's term.  960 C.M.R. § 4.03(14)(b) (providing, in relevant part, that a CD "becomes reportable as abandoned property three years following the maturity date of the first rollover" and that "a six month Certificate of Deposit would be reported as abandoned property four years from the date the account was opened[ ] [and] a one-year Certificate of Deposit would be reported as abandoned property five years from the date the account was opened").  This is true unless the owner of the CD—Gallagher—consented to renewal in writing at or around the time of renewal.  Id.; Mass. Gen. L. c. 200A, § 3A(a).  Importantly, an automatic rollover clause regarding the CD is not sufficient to satisfy the requirement of written consent from the owner.  960 C.M.R. § 4.03(14)(b).

Here, the CDs were issued in April 1991 and matured at some point between three and four months later.  D. 19-2.  Even applying the longer five-year timeframe provided under 960 C.M.R. § 4.03(14)(b) for a one-year CD, Gallagher's CDs would have become abandoned property in or before April 1996, see 960 C.M.R. § 4.03(14)(b); D. 7 at 5 n.2.  AmeriFirst, however, merged with

Washington Mutual Bank ("WaMu") in 1997 and Chase subsequently acquired WaMu in 2008. D. 11 at 5–7 & nn.3–4; D. 11-1; D. 11-2.[1]  Because Gallagher does not allege that he made a written request at or around the time when the CDs renewed, 960 C.M.R. § 4.03(14)(b), the CDs became abandoned property while they were still held by AmeriFirst, before Chase "acquired all deposits, assets and certain liabilities of [WaMu]," D. 11-2 at 1.  For at least these reasons, Gallagher has not plausibly stated the existence of a contract with Chase.  Similarly, Gallagher has not plausibly alleged how this defendant, Chase, has breached the Agreement or any contract to Gallagher.   Accordingly, Gallagher has not presented a plausible basis for his breach of contract claim and the Court, therefore, allows the motion to dismiss as to Count I.

## B.    Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, all contracts include an implied covenant of good faith and fair dealing.  Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 385 (2004) (citation omitted).  "The covenant of good faith and fair dealing requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'"  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570 (2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471–72 (1991)).  "[R]ecovery under [a theory of breach of the implied covenant of good faith and fair dealing] requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage."  Christensen v. Kingston

---

[1] Gallagher has submitted pages obtained from the FDIC website, D. 11-1, and a press release, D. 11-2, to allege that the history and relationships between AmeriFirst, WaMu and Chase. Although these documents are not attached to the complaint, the Court takes judicial notice of same.  Madison v. Cruz, 393 F. Supp. 3d 135, 137 & n.2 (D. Mass. 2019) (taking judicial notice of press releases); McAllister v. Countrywide Home Loans, Inc., No. 16-cv-10911-GAO, 2017 WL 1173925, at *3 (D.  Mass. Mar. 29, 2017) (citation and footnote omitted) (taking judicial notice of document located on FDIC website evidencing merger between two banks).

Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (citing Anthony's Pier Four, 411 Mass. at 471). Good faith and fair dealing, however, cannot "create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." T.W. Nickerson, 456 Mass. at 570 (quoting Uno Rests., Inc., 441 Mass. at 385). The "inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain," Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 612 (D. Mass. 2016), and by assessing "the party's manner of performance," Weiler v. PortfolioScope, Inc., 469 Mass. 75, 82 (2014) (quoting T.W. Nickerson, 456 Mass. at 570).

Here, Count II fails for similar reasons as Count I does. Gallagher cannot plausibly allege that Chase breached an implied covenant of good faith and fair dealing where it is not plausibly alleged that Chase, a successor, undermined the fruits of the Agreement even as alleged and discussed above. Accordingly, the Court allows the motion to dismiss as to Count II.

**C.     Count III: Negligence**

Under Massachusetts law, "[t]o adequately state a claim for negligence, a plaintiff must plausibly allege 'that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.'" Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 248 (D. Mass. 2012) (quoting Jupin v. Kask, 447 Mass. 141, 146 (2006)). Gallagher claims that Chase owed him a duty of reasonable care as to the CDs and that Chase breached its duty because Chase "failed to produce the Funds, failed to allow [Gallagher] access to the Funds, failed to surrender the Funds to [Gallagher], failed to provide [Gallagher] with required notices, and [ ] failed to

produce any records relative to the Funds."  D. 1-1 ¶¶ 42, 45.  According to Gallagher, Chase's alleged negligence caused him harm.  Id. ¶¶ 46–47.

Here, Gallagher cannot establish a legal duty necessary for a successful negligence claim. To the extent that Gallagher bases his negligence claim on the argument that Chase owes him a fiduciary duty as the alleged holder of the CDs, D. 11 at 13, this argument fails.  Chase, as a bank, does not owe Gallagher a fiduciary duty.  See In re Greenberg, 212 B.R. 422, 428 (Bankr. D. Mass. 1997), aff'd, 229 B.R. 544 (Bankr. App. P. 1st Cir. 1999) (citing Massachusetts law explaining that a bank's relationship with its customers is of creditor and debtor, not a fiduciary one). Because Gallagher has not plausibly alleged that Chase owes him a duty of care, Gallagher's negligence claim fails as a matter of law.  Accordingly, the Court allows the motion to dismiss as to Count III.

### D.    Count IV: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must plausibly allege:  "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."  Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (citation omitted).  As to the first element, Gallagher claims that as the successor entity of AmeriFirst, Chase held the funds associated with the CDs and enjoyed the benefit of having the funds on deposit.  D. 11 at 14 (citing D. 1-1 ¶ 12); D. 1-1 ¶¶ 49–50.  As to the second element, Gallagher alleges that Chase had knowledge of the benefit because he contacted Chase on multiple occasions to withdraw the funds. D. 11 at 14 (citing D. 1-1 ¶¶ 15–17).  As to the third element, Gallagher asserts that allowing Chase

to retain the benefit of the funds would be inequitable to his "severe detriment."  Id. (citing D. 1-1 ¶¶ 15–17).

For the aforementioned reasons, however, this claim fails as a matter of law because, as suggested above in regard to the discussion of the operation of 960 C.M.R. § 4.03(14)(b), it has not been plausibly alleged that Chase had the benefit of the CDs and, therefore, it also not further plausibly alleged that it retained any such benefit to Gallagher's detriment.  Accordingly, the Court allows Chase's motion to dismiss as to Count IV.

### E.    Count V: Promissory Estoppel

To state a claim for promissory estoppel, "a plaintiff must allege that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise."  Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (citation omitted) (applying Massachusetts law); see Rhode Island Hosp. Tr. Nat'l Bank v. Varadian, 419 Mass. 841, 848 (1995).  "Courts typically invoke the doctrine of promissory estoppel when the formal requirements of contract formation are absent and when enforcing the promise would serve the interests of justice."  Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763, 776 (1st Cir. 1997) (citation omitted); see Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 353 (D. Mass. 2011) (noting that "promissory estoppel is usually asserted as an alternative theory of recovery for a contract that is not supported by consideration"); see also Durmic v. J.P. Morgan Chase Bank, NA, No. 10-cv-10380-RGS, 2010 WL 4825632, at *5 (D. Mass. Nov. 24, 2010).

As to the first element of promissory estoppel, Gallagher claims that Chase "made a clear and unambiguous promise" to maintain the funds associated with the CDs "in compliance with all

banking laws and obligations." D. 1-1 ¶ 55. Gallagher contends that it was reasonable and foreseeable that he would rely upon the promise and allow Chase to continue to hold the funds. Id. ¶¶ 56–57. Regarding the second element, Gallagher asserts that he allowed Chase to hold the funds in reliance of the promise. Id. ¶ 56. Similar to the discussion above, at a minimum, Gallagher has not plausibly alleged a factual basis that Chase made any clear or unambiguous promise to retain the funds associated with the CDs or what banking laws or other obligations would give rise to same. Accordingly, the Court allows Chase's motion to dismiss as to Count V.

### F.   Count VI: Conversion

"Under Massachusetts law, a person 'who intentionally or wrongfully exercises acts of ownership, control, or dominion over personal property to which he has no right of possession at the time' is liable for conversion." Blake v. Pro. Coin Grading Serv., 898 F. Supp. 2d 365, 386 (D. Mass. 2012) (quoting Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985)). To state a claim for conversion, a plaintiff must plausibly allege that: "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; [and] (3) the plaintiff was damaged by the defendant's conduct." Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993). At least as to the first element, the conversion count fails to state a plausible claim. Gallagher alleges that he is the sole owner of the CDs, which Chase controls. D. 1-1 ¶¶ 9, 12. According to Gallagher, Chase has "intentionally refused . . . to provide access to the Funds," and it "wrongfully converted dominion and/or control over the Funds," causing continued harm. Id. ¶¶ 67–69. In light of 960 C.M.R. § 4.03(14)(b) and the documents provided by Gallagher concerning the institutional history

between AmeriFirst, WaMu and Chase, D. 11-1; D. 11-2, Gallagher has not plausibly alleged that Chase exercises control or ownership over the CDs, as required for conversion.  Accordingly, the Court allows Chase's motion to dismiss as to Count VI.

### G.      Count VII: Mass. Gen. L. c. 93A, § 9

To state a claim under Mass. Gen. L. c. 93A, a plaintiff must plausibly allege:  (1) an unfair or deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the wrongful conduct and the consumer's injury. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017).  A plaintiff must also satisfy demand letter requirements.  Under c. 93A, the plaintiff must send a letter to the prospective defendant "[a]t least thirty days prior to the filing of any [claim, including] a written demand for relief, . . . and [a] reasonabl[e] descri[ption of] the unfair or deceptive act or practice relied upon and the injury suffered."  Mass. Gen. L. c. 93A, § 9(3).  This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'"  Rodi, 389 F.3d at 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975)).

Gallagher appears to concede that he did not send a written demand letter to Chase before bringing suit.  See D. 11 at 19.  Instead, Gallagher communicated with Chase in person and over the phone.  Id.  Gallagher explains that he sent written communications to the Florida Office of Financial Regulation and the Office of the Comptroller of the Currency ("OCC") to try to locate and gain access the CDs.  Id.  Specifically, Gallagher alleges that "[i]n a communication to the OCC dated February 19, 2021, [he] referenced Chase's breaches and failure to perform its obligations . . ., the damages incurred as a result and a potential suit seeking all legal and equitable remedies including punitive damages and attorneys' fees."  Id. at 19–20.  According to Gallagher, "it is more than likely" that the OCC forwarded the February 19, 2021 letter to Chase.  Id.

Even assuming *arguendo* that Gallagher had satisfied the demand letter requirement, he has failed to allege plausibly that Chase committed an unfair or deceptive act or practice as to the CDs where, as Chase puts it, at the best, there was a good faith dispute between the parties that liability exists and that does not give rise to a plausible c. 93A claim. D. 16 at 14 (citing Duclersaint v. Fed. Nat'l Mortg. Ass'n, 427 Mass. 809, 814 (1998)). Accordingly, the Court allows Chase's motion to dismiss as to Count VII.[2]

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Chase's motion to dismiss, D. 6, as to all remaining claims.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] To the extent that Chase raises other bases for dismissal as to various of the Counts, the Court need not reach them in light of the analysis above.